**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 10-379 |
| BRANDON BRUNSON, | : | |
| *Defendant*. | : | |

**MEMORANDUM**

**JONES, II  J.**                                                                 **August 30, 2022**

## I.    INTRODUCTION

Since the first cases of an unknown respiratory illness were reported in December 2019,[1] a

localized outbreak of coronavirus disease 2019 (hereinafter "COVID-19") quickly evolved into a

global pandemic,[2] causing a public health emergency of international concern.  As of date, the

World Health Organization (hereinafter "WHO") has reported over 596.8 million confirmed cases

of COVID-19 total across the six (6) continents, including more than 6.4 million deaths.  There

have been over 12.4 billion doses of the COVID-19 vaccine administered.[3]

In view of the foregoing, Defendant Brandon Brunson (hereinafter "Defendant") moves

for the second time for compassionate release for "extraordinary and compelling reasons" under

the First Step Act.[4]  Pending before the Court is Defendant's Second *Pro Se* Motion for

---

[1] The World Health Organization ("WHO") traces the origin of COVID-19 to a local outbreak in the City of Wuhan, Hubei Province, in Central China.  *See* World Health Organization, *Timeline of WHO's response to COVID-19*, https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last updated Jan. 29, 2021) [hereinafter *WHO's COVID-19 Timeline*] (reporting that the first cluster of COVID-19 cases emerged in December 2019); *see also* discussion *infra* Section II.B.

[2] On March 11, 2020, the WHO characterized the spread of COVID as a pandemic.  *See* World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020* (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020; *see also WHO's COVID-19 Timeline*, *supra* note 1.

[3] World Health Organization, *Coronavirus (COVID-19) Dashboard*, https://covid19.who.int/ (last updated Aug. 26, 2022).

[4] 18 U.S.C. § 3582(c)(1)(A).

Compassionate Release (ECF No. 59) (hereinafter "Motion").  For the reasons set forth below, Defendant's Motion is denied.

## II.    BACKGROUND

### A.    Defendant's Sentencing History

On June 10, 2010, Defendant was charged with four (4) counts of interference with commerce by robbery, in violation of 18 U.S.C. §1951(a) (Hobbs Act robbery) (Counts One, Three, Five, and Seven), and four (4) counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. §924(c) (Counts Two, Four, Six, and Eight).  *See* Indictment Counts 1-8 (ECF No. 1).  The indictment charged the twenty-two (22) year old Defendant with committing four (4) armed robberies in January and February of 2010.  *Id.*  On November 20, 2014, Defendant entered a plea of guilty to Counts One (1), Three (3), Four (4), Five (5), and Seven (7)—(four (4) armed robbery counts and one (1) § 924(c) count, pursuant to a plea agreement under the Federal Rule of Criminal Procedure 11(c)(1)(C).  *See* Plea Doc. (ECF No. 37).  On March 31, 2015, Defendant was sentenced to 240-months' imprisonment, five (5) years of supervised release, paying restitution in the amount of $737.00, paying a fine of $2500.00, and paying a special assessment of $500.00.  *See* Judgment (ECF No. 44).  Defendant is currently serving his sentence at FCI Loretto. [5]  At this time, the Federal Bureau of Prisons (hereinafter "BOP") notes his expected release date to be July 9, 2027.[6]

The Government further clarifies that Defendant has presently served nearly 149 months of his 240-month sentence.  Response in Opposition (ECF No. 60) (hereinafter "Response") 2.[7]

---

[5] *See* Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Aug. 30, 2022).
[6] *Id.*
[7] The Court will refer to the ECF pagination for citation purposes.

He has good time credit for approximately eighteen (18) months, so he has served about 167 months of his sentence with a minimum release date of June 12, 2027.  Resp. 2.

### B.     Defendant's Medical History

Defendant is 34-years old and, as of September 24, 2021, he weighed 301 pounds.  *See* Def's Med. R., attached to Resp. as Exhibit A (hereinafter "Ex. A") (ECF No. 61) at 35. At this same visit, his provider noted that Defendant "is no longer taking prescribed mirtazapine" as "his mental health symptoms are well-controlled without medication."  Ex. A at 34.

Defendant states that, though he has received three (3) COVID-19 vaccines,[8] he has contracted COVID-19 twice.  Mot. 1.  His most recent contraction occurred on January 18, 2022, where he was monitored for ten (10) days and placed in isolation; his medical reports state that he presented no symptoms.[9]  Ex. A at 61-66.

## III.    PROCEDURAL HISTORY

On July 2, 2020, Defendant filed his first Motion for Compassionate Release (ECF Nos. 49 & 50), which this Court denied with leave to re-file on December 7, 2020 (ECF No. 58).  On April 4, 2022, Defendant filed the instant Motion.  The Government submitted a Response to Defendant's Motion on April 11, 2022.  On May 9, 2022, Defendant submitted a Reply in further support of his Motion (ECF No. 64) (hereinafter "Reply").  With these filings, Defendant's Motion is ripe for the Court's review.

## IV.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in

---

[8] Defendant received his third dose, the Pfizer booster, on December 14, 2021.  *See* Ex. A at 85.
[9] This contrasts with Defendant's assertion that each time he contracted COVID-19, he presented symptoms such as: shortness of breath, loss of smell and taste (he further alleges he has still not regained his sense of smell), body cramps, lower back pain, joint pain, fear, stress, anxiety, and depression.  Mot. 12.  Defendant's medical records fail to support such allegations.

limited circumstances." *See Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted); *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)) (declaring that a court may not modify a term of imprisonment except in enumerated cases). One limited exception is 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release."

On December 21, 2018, the First Step Act ("FSA")[10] amended 18 U.S.C. § 3582(c)(1)(A) to add a provision that allows a defendant to move to a district court for a reduction in sentence, *i.e.* petition the court for compassionate release,[11] after exhausting the BOP's administrative process. Under 18 U.S.C. § 3582(c)(1)(A)(i), a sentencing court may reduce an inmate's term of imprisonment only if the following four conditions are met: (1) "the inmate must satisfy an administrative exhaustion requirement;" (2) "the Court must find that 'extraordinary and compelling reasons warrant such a reduction;'" (3) "any reduction granted by the Court must be 'consistent with any applicable policy statements issued by the Sentencing Commission;'" and (4) "the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. §3553(a)." *United States v. Brown*, 13-CR-176-05, 2020 WL 2615616, at * 1 (E.D. Pa. May 22, 2020).

## V. DISCUSSION

In his Motion, Defendant argues that the cumulative effect of his health concerns, the increased risks of COVID-19 transmission in detention facilities, his family circumstances, the length of his sentence, and his relative youth at the time of his conviction compared with the

---

[10] First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018).
[11] 18 U.S.C. § 3582(c)(1)(A) "defines the mandatory conditions precedent to a defendant filing a motion for compassionate release." The Court notes that the Sentencing Guidelines have not been updated to reflect the First Step Act, which provides that incarcerated defendants may file motions for compassionate release for disposition by the court. Pub. L. 115-391, §§ 603(b)(1), 132 Stat. 5194, 5239. Previously, such motions could be filed only by the Director of the BOP. U.S.S.G. § 1B1.13.

amount of time he has served constitutes an "extraordinary and compelling reasons" pursuant to the FSA, 18 U.S.C. § 3582(c)(1)(A)(i). Based on these factors, Defendant urges the Court to reduce his sentence to time served. Mot. 1. Accordingly, the Court considers the following: (1) whether "extraordinary and compelling reasons" exist to reduce Defendant's sentence based on the enumerated criteria in the policy statement and an independent assessment; and (2) whether Defendant is a danger to the community under § 3142(g) and the § 3553(a) factors support a sentence reduction. *United States v. Pabon*, 17-CR-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### A.      Exhaustion of Administrative Remedies

Before a defendant can proceed to the merits of a motion for compassionate release, the defendant must satisfy Section 3582(c)(1)(A)'s exhaustion requirement.[12] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). To accomplish this, the First Step Act furnishes prisoners with "two direct routes to court: [either] (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion [for compassionate release], or (2) file a motion 'after the lapse of 30 days from the receipt . . . of such a request' by the warden of the prisoner's facility, 'whichever is earlier.'" *United States v. Wilson*, No. 14-CR-209-01, 2020 WL 1975082, at * 2 (E.D. Pa. Apr. 24, 2020) (quoting *United States v. Rodriguez*, No. 03-CR-271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Raia*, 954 F.3d at 595. Under the exhaustion requirement, the BOP is given "a chance to review a defendant's request in the first instance[, which] can result in the request being 'resolved much more quickly and economically . . . than in litigation in federal court.'" *Woodford v. Ngo.*, 548 U.S. 81, 89 (2006). Moreover, it

---

[12] Section 3582(c)(1)(A) prohibits a defendant from moving for compassionate release, and the court from acting on that motion, until after the defendant has satisfied the statute's exhaustion requirement. Prior to the First Step Act, a motion for compassionate release could be brought by only the director of the BOP, not the defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017).

permits the BOP "to gather the defendant's administrative and medical records, helping to 'produce a useful . . . record for subsequent judicial consideration.'" *Id.*

Although courts are split on whether the failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, the Third Circuit has determined that an inmate may file a motion for compassionate release in a United States District Court thirty (30) days after presenting the request to the warden, regardless of whether the administrative appeal process is complete. *See United States v. Harris*, 973 F.3d 170 (3d Cir. 2020). In the present case, Defendant notes that FCI Loretto has been in a shelter-in-place status since December 27, 2021, so he has not had access to any of the inmate printers to view the electronic request he previously sent to the warden. Mot. 2. Despite his inability to access this document, Plaintiff states, and the Government does not contest, that his request to the warden has remained unanswered. Mot. 2. As it has been more than thirty (30) days since presenting his request to the warden, Defendant's Motion is ripe for the Court's review.

### B.    Extraordinary and Compelling Reasons

Given that Defendant has met the administrative remedy exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A), Defendant's "next hurdle is to establish that 'extraordinary and compelling reasons' warrant a reduction of his sentence." *United States v. Cantatore*, 16-CR-0189, 2020 WL 2611536, at *3 (N.D.J. May 21, 2020).

"Section 3582(c)(A)(1) does not define what constitutes 'extraordinary and compelling reasons.' Instead, Congress delegated authority to the Sentencing Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v.*, No. 18-CR-184, 2020 WL 2126782, at *4 (E.D. Pa. May 5, 2020).[13]

---

[13] The Commission provided its definition of the term "extraordinary and compelling reasons" in U.S.S.G. § 1B1.13, Application Note 1, which provides, in its entirety:

Here, Defendant appears to allege that a combination of his health concerns, the increased risks of COVID-19 transmission in detention facilities, his family circumstances, and the length of his sentence constitutes an extraordinary and compelling reason for a reduction in sentence. The Court will address each in turn.

1.      **Defendant's Medical Concerns**

Defendant first claims that his obesity, depression, and anxiety[14] make him particularly

---

1. Extraordinary and Compelling Reasons – Provided the defendant meets the requirements of subdivision (2) [*i.e., danger to the community*], extraordinary and compelling reasons exist under any of the circumstances set forth below:
    (A) Medical Condition of the Defendant. –
        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
        (ii) The defendant is –
            (I) suffering from a serious physical or medical condition,
            (II) suffering from a serious functional or cognitive impairment, or
            (III) experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
    (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious health deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
    (C) Family Circumstances
        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
    (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reasons other than, or in combination with, the reasons described in the subdivisions (A) through (C).

[14] Defendant states that his mental health has suffered through the pandemic due to his understandable concerns over re-infection and the fact that he is unable to receive the cognitive therapy, which accompanies the medication he receives (Mirtazapine). Mot. 12. As to his general concerns over potential re-infection, the Court will analyze this point further in its present Opinion. Considering Defendant's concerns over no longer receiving cognitive therapy, the most recent update as to Defendant's mental health in his medical records is cited at his September 24, 2021 clinical visit. There, his provider notes that Defendant stopped taking his prescribed mirtazapine because he reported "that his mental health symptoms are well-controlled without medication." Ex. A at 34. Since this date, Defendant's medical records are silent as to any reported mental health concerns, despite him visiting his clinician with relative frequency. Should Defendant require further mental health treatment, he must first give the BOP the opportunity to address this concern. Without any documentation that Defendant has raised such concerns to his provider since this September 24, 2021 visit, the Court cannot consider the point further as an extraordinary and compelling reason when his clinician may be able to appropriately address this issue.

susceptible to contracting COVID-19.  Mot. 12.  He further states that this is evidenced by the fact that he has contracted the virus twice and experienced symptoms each time.  Mot. 12.  The Court disagrees.

While the Court recognizes Defendant's obesity places him at a higher risk for severe outcomes from contracting COVID-19,[15] such risk is offset by the fact that his medical records state that he contracted COVID-19 twice, recovered with little complications, and is now fully vaccinated against the illness.[16]  Courts have echoed the strength in the efficacy of the vaccines and continue to hold that where a defendant was vaccinated, even if he otherwise presented a comorbidity, compassionate release should be denied.  *See Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (holding that both prior infection with COVID-19 and receiving available vaccinations eliminates any imminent health threat caused by COVID-19); *United States v. Hannigan*, No. 19-CR-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) ("Even in the era of the highly transmissible omicron variant,... District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release."); *United States v. Gordon*, No. 99-CR-342-02, 2022 WL 377395, at *5 (E.D. Pa. Feb. 7, 2022) (failing to find an extraordinary or compelling reason where the defendant suffered from a serious bout of COVID-19 because, after receiving his vaccination, "he has failed to show he is at any greater threat of contracting COVID-19 in his current

---

[15]   CDC, *Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions html (last updated June 15, 2022).

[16]   *See* CDC, *COVID-19 vaccines continue to protect against hospitalization and death among adults*, https://www.cdc.gov/media/releases/2022/s0318-COVID-19-vaccines-protect.html (last updated Mar. 18, 2022).

situation than the general public."); *United States v. Reed,* No. 18-CR-78, 2021 WL 2681498, at

*4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered

throughout the Bureau of Prisons, compassionate release petitions generally lack merit); *United*

*States v. Sturgell*, No. 15-CR-120, 2021 WL 1731787, at *7 (E.D. Pa. May 3, 2021) (denying

compassionate release where the defendant recovered from COVID-19 and has received the first

dose, and is scheduled to receive the second dose, of the Pfizer vaccine); *United States v.*

*Irizzary*, No. 14-CR-652-13, 2021 WL 735779, at *7 (E.D. Pa. Feb. 25, 2021) (declining

compassionate release where the prisoner already contracted and recovered from COVID-19

with little complication and was fully vaccinated with the Moderna vaccine); *United States v.*

*Moore*, No. 18-CR-474, 2021 WL 308331, at *2 (E.D. Pa. Jan. 29, 2021) ("[The inmate's]

previous experience with COVID-19 does not present an extraordinary and compelling reason

for his release either.  Numerous courts have denied compassionate release at least partially

because a movant already contracted the virus."); *United States v. Jimerson*, No. 15-CR-209,

2021 WL 280085, at *3 (E.D. Pa. Jan. 25, 2021) (finding no extraordinary or compelling reason

for release where the prisoner had already recovered from COVID-19).

In this case, Defendant has already contracted and recovered from COVID-19 with no

documented complications and is fully vaccinated.  Because his health concerns relate entirely to

COVID-19, they do not warrant an extraordinary and compelling reason for release.

### 2.    COVID-19 Transmission in Detention Facilities

In addition to his own health concerns, Defendant suggests that the pandemic has caused

staffing shortages and increased risk of infection, so being subjected to these prison conditions is

more punitive than under ordinary circumstances.  Mot. 3-4.  However, general concerns over

the pandemic and its direct and indirect consequences[17] do not warrant an extraordinary and compelling reason for release.

To be clear, the severity of the COVID-19 pandemic cannot be discounted.  However, the Third Circuit has made apparent, "[t]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *Raia*, 954 F.3d at 597.  Though the Court recognizes Defendant's concern of possible exposure to COVID-19 while incarcerated, "[t]he mere chance that Defendant may contract the virus....and be more susceptible to complications if he does is not enough on its own to demonstrate extraordinary and compelling circumstances supporting release[.]"  *United States v. Thornton*, No. 18-CR-167-01, 2020 WL 4368155, at *4 (W.D. Pa. July 29, 2020).  *See United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *United States v. Castellanos*, No. 15-CR-17-01, 2021 WL 5768113, at *2 (E.D. Va. Dec. 6, 2021) ("The harshness of prison conditions caused by pandemic restrictions cannot constitute an extraordinary and compelling reason for release, as they effect every federal prisoner."); *United States v. Johnson*, No. 18-CR-907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021) ("[A]lthough the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure.  While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and

---

[17] Specifically, Defendant suggests that staffing shortages at the prison have now caused him to have his laundry done once per week, he has not been issued any new bed linens, and modified operations have prevented him from accessing rehabilitation and recidivism reduction programming.  Mot. 3.

compelling."); *United States v. Jiggetts*, No. 14-CR-178, 2021 WL 2042669, at *2 n.1 (M.D. Fla. May 21, 2021) ("[N]early all prisoners have experienced altered conditions as a result of the Covid-19 pandemic during the past year.  If this circumstance qualified as 'extraordinary and compelling,' nearly every prisoner in BOP custody would qualify for a sentence reduction under § 3582(c)(1)(A).").

Accordingly, though the Court is aware of the dangers and hardships prisoners face with COVID-19, these must be considered in light of the BOP's efforts to combat and contain the virus.  Without reason to believe the BOP's response has been inadequate, and without any explanation as to how Defendant's prison experience is different from all federal prisoners', his general concerns over COVID-19 cannot be an extraordinary and compelling reason for release.

### 3.      Family Circumstances

In addition to his concerns over COVID-19, Defendant requests compassionate release based on family circumstances because he is the only available caregiver for his sister who is suffering from stage four (4) maxillary sinus cancer.  Mot. 5-6.  Specifically, because his sister is unable to care for herself, her sixteen (16) year old son now bears the burden of caring for her other children, a twelve (12) year old daughter and a newborn infant.  Mot. 6.  Though the Court commends Defendant for his desire to care for his sister and does not discount the undeniable difficulties her illness poses, such is insufficient to warrant an extraordinary and compelling reason for release.

"The Sentencing Commission's policy note...defines an 'extraordinary and compelling reason' for family circumstances as either '[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children' or '[t]he incapacitation of the defendant's spouse or registered partner.'"  *United States v. Gaskin*, No. 15-CR-352, 2020 WL 7263185, at *4 (E.D.

Pa. Dec. 9, 2020) (quoting U.S.S.G. § 1B1.13 (Application Note I.(C)(i)-(ii))).  "A family member's illness, absent incapacitation or death, is not enough to constitute an extraordinary and compelling family circumstance.  District Courts routinely deny motions for compassionate release where the defendant cannot show that they would be the only available caregiver even if their incarceration imposes substantial burdens on their spouse or co-parent to a minor child." *United States v. Cruz-Rivera*, No. 11-CR-43, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9, 2020). *See United States v. Nassida*, No. 14-CR-241, 2020 WL 4700845, at *3 (W.D. Pa. Aug. 13, 2020) (denying compassionate release where the defendant's wife was getting pre-breast cancer treatment and a knee replacement, and the defendant's daughter, who would care for her during these times, also suffered from severe health conditions); *Thornton*, 2020 WL 4368155, at *5 n.10 (denying compassionate release where the defendant's child suffered from cancer and the mother, who recently lost her job, could not properly care for their children because there was no incapacitation or death of the caregiver).  Notably, "'[j]udges in this District have yet to find care for elderly or ill parents rises to the level of extraordinary and compelling circumstance warranting release.'"  *United States v. Pizzo*, No. 19-CR-289, 2022 WL 1045235, at *3 (E.D. Pa. Apr. 7, 2022) (quoting *United States v. Siberio-Rivera*, No. 17-CR-320-06, 2020 WL 7353367, at *1 (E.D. Pa. Dec. 15, 2020)).  *See Gaskin*, 2020 WL 7263185, at *3 ("Many, if not all inmates, have aging and sick parents.  Such circumstance is not extraordinary." (internal citation and quotation marks omitted)).

Though Defendant's desire to help his sister is admirable, this is not the type of relationship that has been defined as extraordinary and compelling.  *See United States v. Irizzary*, No. 14-CR-652-13, 2021 WL 735779, at *8 (E.D. Pa. Feb. 25, 2021) ("The United States correctly states caring for ill or incapacitated siblings is not explicitly listed by the Bureau of

Prisons as an extraordinary and compelling reason to reduce a final sentence."). However, even considering this relationship to be an appropriate family circumstance, Defendant still does not present an extraordinary and compelling reason by failing to show that he is the only available caregiver to his sister. Specifically, he has failed to show that "all other available caregivers...are incapacitated." *United States v. Rooks*, Nos. 21-CR-38 & 21-CR-43, 2022 WL 267889, at *6 (E.D. Pa. Jan. 28, 2022). Incapacitation requires the person to be "'completely disabled' or unable to 'carry on any self-care and [are] totally confined to a chair or bed.'" *Id.* (quoting *Cruz-Rivera*, 2020 WL 5993352, at *7). It is insufficient to show incapacitation by pointing to evidence that a person would be inconvenienced by taking over as caregiver or, themselves, is "'somewhat sick.'" *Id.* (quoting *United States v. Seals*, 509 F. Supp. 3d 259, 263 (E.D. Pa. 2020)).

Here, Defendant notes that his and his sister's father lives out of state and cannot financially return to Pennsylvania, and their mother is caring for her sibling's autistic child. Mot. 6. He further states that his sister does not have a husband, and the father of her children is deceased, leaving only her sixteen (16) year old son to care for her other children. Mot. 6. While the Court understands the burden this must place on his sister, such does warrant an extraordinary and compelling reason when Defendant fails to explain how there are no other available caregivers, especially when he explicitly states that he, himself, "has plenty of family support from his wife and children and various family and friends in the greater Philadelphia area and throughout the country." Mot. 16. Moreover, though Defendant claims his sister is incapacitated, she still manages to attend chemotherapy appointments twice per week and visits her oncologist five (5) days per week, even without Defendant's present assistance. Mot. 5.[18]

---

[18] Though Defendant claims that his case is comparable to *United States v. Seals* where Judge McHugh found an extraordinary and compelling reason when the defendant's mother was suffering from pancreatic cancer and could no

Though these appointments undoubtedly put a strain on Defendant's sister, and the Court recognizes that it would be easier for her to have Defendant at home, without further proof of her own immobility or why no other caregiver is available, Defendant's family circumstances do not amount to an extraordinary and compelling reason for release.

### 4.      Length of Defendant's Sentence

Defendant further urges the Court to consider the disparity between the sentence he received and the allegedly more lenient sentence he would receive today given the revisions to statutory penalties under 18 U.S.C. § 924(c).  Mot. 9.  However, the Third Circuit, in a non-precedential opinion, has stated that "[t]he nonretroactive changes to the § 924(c) mandatory minimums...cannot be a basis for compassionate release." *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021).  Though District Courts have been split on whether this guidance is appropriate in analyzing a Motion for Compassionate release, importantly, such would be inapplicable to Defendant's sentence regardless.  Section 403 of the FSA amended 18 U.S.C. § 924(c) to state that enhanced sentences should only apply to defendants who had a prior, final conviction under § 924(c), not to cases where defendants were convicted of multiple § 924(c) charges in the first instance.  Here, however, Defendant was not sentenced to multiple § 924(c) charges due to a plea agreement he entered into with the Government.  Accordingly, the Court cannot consider such to be an extraordinary and compelling reason for release.

---

longer care for the defendant's daughter, such a case is distinguishable from the case at bar.  509 F. Supp. 3d at 263. Notably, in that case, the defendant's mother required the defendant to take care of his daughter, not his mother, and he was able to show that he was the only available caregiver through testimony from other family members.  Here, by Defendant's own admission, he has support from various family members and friends throughout the Philadelphia area.  Though these individuals may surely be inconvenienced by caring for Defendant's sister, he has failed to explain how his sister lacks access to this same support system, particularly during an obvious time of need.

5.      **Defendant's Age at the Time of Conviction and Amount of Sentence Served**

Finally, Defendant asks this Court to consider his relative youth at the time of his offense and the fact that he has served about two-thirds of his current sentence as an extraordinary or compelling reason for release.  Mot. 9-12; Reply 1-2.  In support of this position, Defendant cites to cases both from within this District and the Fourth Circuit to suggest this Court follow an alleged trend of decreasing sentences for youth offenders.  The Court will address the facts of each case in turn.

First, turning to *United States v. Briggs*, 524 F. Supp. 3d 419 (E.D. Pa. 2021), Judge DuBois reduced a defendant's sentence to time-served when he had served nearly sixteen (16) years (considering good time credit) of a thirty-two (32) year sentence.  Mr. Briggs's sentence stemmed from several bank robberies he and others committed at gunpoint when he was twenty-six (26) years old.  *Briggs*, 524 F. Supp. at 422.  Briggs was charged with a five-count Indictment, charging him with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 471 (Count 1); armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Counts 2 and 4); and carrying and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Counts 3 and 5).  *Id.*  At trial, Briggs was convicted on all counts, and because of the mandatory minimums on the two (2) § 924(c) counts, the trial judge reluctantly sentenced him to the mandatory thirty-two (32) year sentence.  Relying on the changes Section 403 of the FSA made to § 924(c) sentencing, and rejecting the non-precedential *Andrews* opinion, Judge DuBois reasoned that the disparity between the 32-year sentence Briggs received and the 14-year sentence he would have received today, constitutes an extraordinary and compelling reason for release.  *Id.* at 427.  Upon finding an extraordinary and compelling reason for release, *then* the

Court considered Briggs' younger age at the time of his offense and his steps toward rehabilitation as § 3355 factors in favor of release.  *Id.* at 428-29.

Similarly, in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit consolidated two (2) cases with similar facts.  The first case involved defendant McCoy, pleading guilty to two (2) counts of Hobbs Act robbery, under 18 U.S.C. § 1951 and two (2) counts of using firearms in connection with those robberies under § 924(c).  *McCoy*, 981 F.3d at 277.  McCoy was nineteen (19) at the time of the robberies with only a prior conviction for reckless driving, but due to the stacked § 924(c) convictions, the Court was required to impose a mandatory sentence totaling thirty-two (32) years.  *Id.*  The other case consolidated the cases of three (3) separate defendants, all of whom were between twenty-two (22) and twenty-four (24) years old at the time of their offenses.  *Id.* at 278.  Despite their ages, because each defendant was convicted of bank robbery chargers and three (3) violations of § 924(c), they each were subjected to mandatory minimum sentences of forty-five (45) years and received sentences between fifty-two (52) and fifty-three (53) years.  *Id.*  The Fourth Circuit affirmed the District Courts' holdings that each defendant presented an extraordinary and compelling reason because their sentences would have been dramatically different than if they had been sentenced today as they would no longer be subjected to the mandatory minimums.  *Id.* at 286.

Both *Briggs* and *McCoy* are distinguishable from the case at bar because, as previously stated, Defendant was not sentenced to a mandatory minimum as the Government did not stack § 924(c) convictions against him in the agreed upon plea agreement.  Even if Defendant believes the sentence he would receive today would be more lenient than the one he received, any changes would not be statutorily assured.  Additionally, and most notably, the courts in *Briggs* and *McCoy* did not consider the defendants' relative youth at the time of their offenses, alone, to

constitute an extraordinary or compelling reason for release.  In fact, Judge DuBois in *Briggs* only considered the defendant's age *after* finding an extraordinary and compelling reason and when analyzing his § 3355 factors.  Here, because § 924(c) sentence stacking is inapplicable to Defendant's case, and he has failed to present any other extraordinary and compelling reason for release, the guidance from *Briggs* and *McCoy* is limited.

As a final case for the Court's consideration, Defendant cites to *United States v. Adeyemi*, 470 F. Supp. 3d 489 (E.D. Pa. 2020), where an immigrant, nineteen-year-old college student with no criminal history received a mandatory thirty-two-year sentence for driving a getaway car while two (2) accomplices robbed drive through windows.  *Adeyemi*, 470 F. Supp. at 492.  This mandatory sentence stemmed from his two (2) counts of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  *Id.* at 494.  Though Adeyemi suffered from both asthma and was subjected to a statutorily longer sentence than he would have received today, Judge Kearney concluded that neither of these facts, alone, were sufficient to warrant an extraordinary or compelling reason.  *Id.* at 517-18, 524-25.  Rather, the Court concluded that the following factors all weighed in favor of the defendant's release:

> the nature and circumstances of the defendant's offense, his criminal history, comments from victims, unresolved detainers, supervised release violations, institutional adjustment, disciplinary infractions, personal history derived from the presentence investigation report, length of sentence and the amount of time served, current age and age at the time of offense and sentencing, release plans, and whether release would minimize the severity of the offenses.

*Id.* at 526 (internal citation and quotation marks omitted).

Judge Kearney only considered Adeyemi's age and the amount of the sentence he served as two (2) out of twelve (12) factors in favor of finding an extraordinary and compelling reason. It was the *cumulative effect* of these factors that led him to grant Adeyemi's release.  Here, Defendant's only remaining arguments in support of an extraordinary and compelling reason are

his relative youth at the time of his offense and the fact that he has served nearly two-thirds of his twenty (20) year sentence.  Even considering these as factors in favor of an extraordinary and compelling reason, not all the remaining ten (10) factors Judge Kearney considered weigh in favor of Defendant's release.  In fact, the Court previously considered many of these factors in-depth in its December 7, 2020 opinion (ECF No. 57) and still found that Defendant's release at this early stage would be inappropriate.  *See* Dec. 7, 2020 Op. at 12.  Though the Court commends Defendant on the steps he has taken towards rehabilitation, his age and the amount of the sentence he has served, without more, are insufficient to warrant an extraordinary and compelling reason.

Because, even cumulatively, Defendant has failed to present a single extraordinary and compelling reason for early release, his Motion must be denied.

### C.      §3553(a) Factors and Dangerousness to Community

Even if this Court found Defendant's stated reasons rose to an extraordinary and compelling reason, those considerations would be outweighed by the §3553(a) factors and that Defendant presents a danger to the community.  Because the Court already addressed these considerations in its December 7, 2020 opinion, it will not analyze them again for purposes of the present opinion.

## VI.    CONCLUSION

The Court concludes that Defendant has not demonstrated extraordinary and compelling reasons justifying his release under 18 U.S.C. § 3582(c)(1)(A) and § 1B1.13 of the Sentencing Guidelines.  For the foregoing reasons, Defendant's Motion for Compassionate Release is denied. An Order consistent with this Memorandum follows separately.